Prior to September 10, 1937, Jean Pierre Fontenot, plaintiff in this suit, was the owner of a tract of land situated in the Parish of Evangeline, having an area of 150 acres. Bayou Cocodrie bordered it on the west and it lay between parallel lines running directly east. The slope of the land was from northwest to southeast with the natural drainage according to those directions, through sloughs leading to a swamp situated southeast of the property.
On September 10, 1937, plaintiff sold to Paul Hampton Smith, one of the defendants, the seventy southern acres of his property, the understanding between them being that the northern line of the tract sold, which then became the dividing line between the two properties, would be parallel to the southern line. At the time of the sale there was a ditch, running north and south, on the southeastern end of the property which helped the natural drainage.
In the sale from the plaintiff to the defendant Smith, there is incorporated the following clause which the court is called on to interpret and apply to the situation as it presently exists: "It is further agreed that the purchaser and vendor shall jointly establish a drainage ditch on the north line of the seventy acres tract herein sold; it being understood that the said ditch have sufficient capacity to take care of the drainage on the balance of land of vendor herein; it being further understood that said ditch is to be maintained thereafter by the purchaser herein, or his assigns."
In accordance with the terms of their agreement, the parties jointly had a ditch dug on the northern line of the Smith property which joined a ditch Smith had dug along the eastern boundary, after his acquisition of his property, this ditch being a continuation of the ditch formerly existing in the southeastern corner of the property before he bought. In excavating the ditch on the dividing line between them, the spoil dirt was evenly distributed and thrown on both sides.
Apparently this ditch which was the one established under the agreement of the parties, did not turn out to be satisfactory, especially, it seems, to the plaintiff. The testimony is to the effect that the sloughs through which plaintiff's land drained were reopened, if indeed they had ever been closed under the agreement. The parties however continued to disagree about the drainage and finally, some six or seven years later, Smith had a large canal dug entirely on his property, some distance south of the dividing line between him and the plaintiff and parallelling that line as did the other ditch. In having this canal dug he had the contractor throw all the spoil dirt on its south-side, this forming an embankment along the canal ranging in height from maybe six feet or more on the western end to some two feet or more at the eastern end. This embankment has the effect, during excessive rainfalls which cause Bayou Cocodrie to overflow, to cause the canal also to overflow and thus impound the water on plaintiff's tract of land. It was to have the defendant Smith remove this dam or embankment which he alleges greatly interferes with his right of drainage that plaintiff instituted this proceeding. After the suit was filed, Smith sold his property to Clarence Estes who was then made a party defendant also.
The main defense to the suit, as urged on an exception of no cause of action, is that by having agreed to a method of drainage of his land by virtue of the stipulation contained in the act of sale from himself to Smith, plaintiff had abandoned the natural servitude of drain which his property enjoyed over that which he sold, and he is consequently held to that method as his only means of drainage. The exception was referred to the merits of the case when it was again urged in answer and further urged that it is only during unusual rainfalls which cause both Bayou *Page 874 
Cocodrie and the canal to overflow that water remains on plaintiffs property as some of it also remains on his. Both defenses were rejected by the trial judge who rendered judgment in favor of the plaintiff as prayed for. Defendants have appealed.
In support of their contention that plaintiff had abandoned his natural right of servitude of drain, counsel for defendants refer to Article 752 of the R.C.C., which reads as follows: "Legal servitudes and even those which result from the situation of places, may be altered by the agreement of parties, provided the public interest does not suffer thereby."
The first thought which comes to our minds, in applying this article to the situation existing in this case is conceding, arguendo, that the stipulation in the act of sale from Fontenot to Smith constituted an agreement contemplating a change in the natural drainage which Fontenot's land enjoyed before, did not the agreement itself cease to exist when the parties were unable to understand each other on the method of construction of the ditch and whether the sloughs running through plaintiff's property were to be closed or not? The action of Smith in later digging a canal entirely on his own property, and at his own expense, clearly evidenced his intention of abandoning the ditch established under the agreement and of having a drainage canal exclusively under his own control. The agreement then no longer existed and the parties were relegated to the status quo ante. Under that status plaintiff's land admittedly was the dominant and defendant's the servient estate. As such, under Article 660 of the R.C.C., plaintiff had the right of drainage over the defendant's land, for that article provides that "It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude." Further it is provided by the terms of the same article that "the proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water." Therefore, whilst the defendant Smith may have had the right to construct a canal on his own property he certainly had no right, in doing so, to use the spoil dirt to make a dam or levee on his property which prevented the running of the water from off of the plaintiff's land as it seems to be conceded it does. That was not only conceded by Smith in his testimony but also by his action in opening two of the five sloughs through which plaintiff's property drained in order to alleviate the condition upon the latter's complaint.
We believe that this view we take of the case disposes of the issue that is before the court. However, even though the agreement contained in the sale from Fontenot to Smith was not abrogated when the original ditch that was dug under it was abandoned and the large canal built by Smith on his property was substituted as a means of drainage contemplated under the agreement, it is nevertheless our opinion that in constructing that canal, Smith had no right to erect the levee he did on its south side, or either side for that matter, which levee, as already indicated, admittedly impedes the drainage of plaintiff's property. Plaintiff's complaint is not about the canal itself which he seems to admit overflows during excessive rainfalls, but about the dam or levee which keeps the water impounded on his property more than it would be otherwise. His contention is that without this levee, when the canal overflows, the water would not be concentrated on his property but would spread over both properties and naturally would drain off of his far more readily. This is but natural and we thoroughly agree with the contention made. Under either view of the case, therefore, the judgment of the lower court is correct and accordingly it is affirmed at the costs of the defendants, appellants. *Page 875